# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JONATHON HOWARD BECK,              *
# 12643-509,                      *
                                 *

    Petitioner,               *
                                 * CRIMINAL NO. 20-00137-CG-B
vs.                             * CIVIL ACTION NO. 24-00016-CG-B
                                 *

UNITED STATES OF AMERICA,     *
                                 *

    Respondent.             *

## <u>REPORT AND RECOMMENDATION</u>

Pending before the Court is Petitioner Jonathon Howard Beck's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 93). This matter has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings, and it is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration, the

---

[1] Senior United States District Judge Callie V.S. Granade presided over the proceedings in this action. The undersigned has reviewed Petitioner Beck's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. <u>Holmes v. United States</u>, 876 F.2d

undersigned hereby recommends that Petitioner Beck's § 2255 motion be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of the Respondent, the United States of America, and against Petitioner Beck. The undersigned further recommends, in the event Petitioner Beck requests a certificate of appealability and seeks to appeal *in forma pauperis,* that said requests be **DENIED**.

## I. BACKGROUND

Petitioner Jonathon Howard Beck ("Beck") was indicted in October 2020 and charged with three counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (counts one, two, and four), and two counts of using, carrying, or possessing a firearm in connection with a drug trafficking felony, in violation of 18 U.S.C. § 924(c)(1)(A) (counts three and five). (Doc. 13).

At a pretrial conference on March 9, 2021, Beck's appointed federal public defender, LaWanda O'Bannon ("O'Bannon"), informed the Court that Beck intended to enter a guilty plea pursuant to a plea agreement. (Docs. 46, 47). Under the plea agreement, Beck agreed to plead guilty to counts two and five of the indictment, while the Government agreed to recommend a sentence at the low end of the advisory guideline range and move to dismiss the remaining

---

1545, 1553 (11th Cir. 1989).

counts after sentencing. (Doc. 48 at 1, 6). The plea agreement detailed Beck's rights, the charges against him, the penalties associated with those charges, and the rights he was relinquishing by pleading guilty. (Id. at 1-13). Beck signed the plea agreement immediately below a paragraph stating that he had consulted with his attorney; he fully understood all of his rights with respect to the offenses charged in the indictment; he had read and carefully reviewed every part of the plea agreement with his attorney; he understood and voluntarily agreed to the plea agreement; and he stipulated that the factual resume incorporated into the plea agreement was true and accurate in every respect and that the Government could have proved the same beyond a reasonable doubt. (Id. at 13-14). O'Bannon likewise signed below a paragraph stating that she had fully explained Beck's rights to him with respect to the offenses charged in the indictment; she had carefully reviewed every part of the plea agreement and factual resume with Beck; and to her knowledge, Beck's decisions to enter into the plea agreement and stipulate to the facts contained in the factual resume were informed, intelligent, and voluntary. (Id. at 14).

At his change-of-plea hearing on March 17, 2021, Beck was placed under oath and questioned by the Court as to the knowing and voluntary nature of his plea. (See Doc. 80). Beck acknowledged that he had received a copy of the indictment,

understood the charges pending against him, and had fully discussed those charges and the case in general with his attorney. (Id. at 4). Beck also confirmed that he had the opportunity to read and discuss the plea agreement and factual resume with his attorney and understood the terms of the plea agreement. (Id. at 4-5). Beck stated that he was fully satisfied with his attorney's representation and advice in this case. (Id. at 4). Beck confirmed that no one had forced, threatened, or made promises to him that were not in the plea agreement in order to persuade him to plead guilty. (Id. at 5). He stated that he was pleading guilty of his own free will because he was guilty. (Id. at 5-6).

The Court informed Beck of the potential penalties for his offenses, and Beck confirmed that he understood "those possible consequences" of his guilty plea. (Id. at 6). Beck acknowledged that he had discussed with his attorney how the sentencing guidelines might affect his sentence, understood that statutory sentencing factors might result in a sentence more or less severe than that called for in the guidelines, and understood that the sentence imposed might be different from any estimate his attorney or anyone else might have given him. (Id. at 7-8). The Court stated the elements of the offenses to which Beck was pleading guilty, and Beck confirmed that he understood what the Government would need to prove in order to convict him of those offenses. (Id. at 10). Beck also agreed that the Government could prove the

facts set out in the factual resume. (Id. at 10-11). Beck entered a plea of guilty to the charges contained in counts two and five of the indictment. (Id. at 11). The Court accepted Beck's plea and adjudged him guilty of those offenses. (Id. at 11-12).

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"). (Doc. 56). The PSR reported that Beck's criminal history category and total offense level yielded a guideline imprisonment range of 70 to 87 months. (Id. at 11). However, the PSR noted that count two required a statutory mandatory minimum 120-month sentence. (Id.). Because the high end of the guideline range was lower than the statutorily required sentence, the PSR reported that the guideline term of imprisonment for count two was 120 months. (Id.). The PSR further noted that count five required a statutory mandatory minimum 60-month consecutive sentence, and that the guideline range for count five was 60 months. (Id.). Neither Beck nor the Government objected to the PSR.

On July 22, 2021, O'Bannon moved to withdraw as counsel for Beck. (Doc. 63). O'Bannon stated that she had "communicated with [Beck] numerous times over the phone, via video, in person at the Monroe County jail or at the US Marshal lock-up area." (Id. at 1). O'Bannon stated that "[e]ach communication with [Beck] encompassed a detailed discussion of the case and discovery, as well as, jury trial versus guilty plea." (Id.). O'Bannon reported

that she had "traveled to Monroe county jail to meet with [Beck] on July 22, 2021 and at that time, [Beck] expressed dissatisfaction in [O'Bannon's] overall representation of his case." (Id.). O'Bannon stated that she had "attempted to engage in discussion with Mr. Beck, to resolve any conflicts, but was unsuccessful and further communications became untenable." (Id. at 1-2). Thus, O'Bannon moved to withdraw as counsel for Beck and requested that new counsel be appointed immediately. (Id. at 2). On July 23, 2021, the Court granted O'Bannon's motion to withdraw and appointed new counsel to represent Beck going forward. (Docs. 65, 66).

At his sentencing hearing on September 15, 2021, Beck briefly addressed the Court and stated the following:

> Yes, ma'am. I'd like to apologize to my country and to my family. I'm sorry.
> And I've had a lot of time to become a better reader since I've been locked up. And now that I understand the gun charge that I signed the plea for – I'm not sure that I completely understood it whenever I did sign the plea. And that I -- I don't recall that I'm guilty of the gun charge. Maybe possessing guns, but not using or carrying them while trafficking.
>
> And – I don't know, Your Honor. That's just it.

(Doc. 82 at 4). The Court responded:

> All right. Well, Mr. Beck, I understand that you may not feel at this point that you are guilty of the gun charge. But at the time that you entered your guilty plea, you were questioned quite extensively about that and you agreed that the factual resume was correct. And I see no reason to undo the fact that you pled guilty to this at this point.

> You have not filed any sort of motion to withdraw your guilty plea, and I find that one is not merited at this time as well.
>
> I do intend to sentence you at the low end of the guidelines. But the low end of the guidelines are the statutory minimums for each of these offenses and it is quite high.

(Id. at 5). The Court sentenced Beck to a term of 180 months in prison, consisting of "120 months on count two and 60 months on count five to be served consecutively to the sentence imposed in count two." (Id. at 6).[3]

Beck filed a notice of appeal. (Doc. 73). Thereafter, Beck's attorney filed an Anders brief and moved to withdraw from further representation of Beck on appeal.[4] (See Doc. 91). On December 5, 2022, the Eleventh Circuit Court of Appeals granted counsel's motion to withdraw and affirmed Beck's convictions and sentences after its independent examination of the record revealed no arguable issues of merit. (Id.). Beck did not petition the United

---

[3] The sentence imposed by the Court was consistent with defense counsel's request at the sentencing hearing that Beck be sentenced to the "mandatory minimums," and with the Government's recommendation of "a low-end guideline sentence consecutive to the 60 months." (See Doc. 82 at 3-6).

[4] An Anders brief is filed by a defense attorney who seeks to withdraw from a case on appeal based on a belief that there are no meritorious issues to raise on appeal. See Anders v. California, 386 U.S. 738, 744 (1967) ("[I]f counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.").

States Supreme Court for a writ of certiorari. (See Doc. 93 at 2).

On December 28, 2023,[5] Beck, proceeding *pro se*, filed the instant § 2255 motion, along with a supporting memorandum and declaration. (Docs. 93, 93-1, 93-2). The Government filed a response in opposition to Beck's motion. (Doc. 98). Beck filed a reply. (Doc. 99). Beck's § 2255 motion has thus been fully briefed and is ripe for resolution.

## II. __HABEAS STANDARD__

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal,

---

[5] Under the mailbox rule, "a *pro se* prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing." Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam). Absent evidence to the contrary, that date is presumed to be the date the prisoner signed the motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam). Beck's § 2255 motion states that it was signed and placed in the prison mailing system on December 28, 2023. (See Doc. 93 at 12).

> a defendant is thereafter precluded from urging the same
> issues in a later collateral attack. . . . A defendant
> is, of course, entitled to a hearing of his claims, but
> not to duplicate hearings.  The appellate process does
> not permit reruns."  <u>Moore v. United States</u>, 598 F.2d
> 439, 441 (5th Cir. 1979).

<u>United States v. Evans</u>, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008
WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

### III. <u>DISCUSSION</u>

In his § 2255 motion, Beck claims that his guilty plea was
not knowingly, intelligently, and voluntarily entered as a result
of ineffective assistance of counsel by O'Bannon, who represented
him during the plea process.  (Doc. 93 at 4).  Beck contends that
O'Bannon "rushed" him "into signing the plea and then . . . through
the change of plea hearing."  (Doc. 93-1 at 2).  Beck avers that
O'Bannon "pressure[d]" him into signing the plea agreement and
entering a guilty plea by telling him that he would end up with a
life sentence if he went to trial.  (Doc. 93-1 at 2, 9).

Beck asserts that O'Bannon's "pressure to accept a plea
agreement which included mandatory minimum sentences well in
excess of the accurately calculated guideline range of
imprisonment constituted deficient performance." (<u>Id.</u> at 2).  Beck
maintains that "[t]his is particularly true, because the mandatory
minimums were based on factors – drug purity and possession of a
firearm in connection with drug trafficking – which Mr. Beck did
not agree with or even fully understand at the time of the plea."

(Id.).  Beck alleges that O'Bannon failed "to ensure that [he] understood the charges to which he was entering a plea" and failed to advise him of his "available options" and the "possible consequences" of a guilty plea.  (Id. at 8-9).  Beck further contends that O'Bannon failed to "provide an accurate assessment of the sentencing exposure [he] would face under a plea versus following his conviction at trial."  (Id. at 10).  Beck maintains that he would have persisted in his plea of not guilty and proceeded to trial had it not been for O'Bannon's deficient performance.  (Id. at 2, 11).

To prevail on his claim of ineffective assistance of counsel, Beck must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) that counsel's poor showing prejudiced his defense because there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  Beck bears the burden of proving his ineffective assistance claims, and he must meet his burden on both prongs to succeed.  Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010).  A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa."  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

The proper measure of attorney performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances. Hinton v. Alabama, 571 U.S. 263, 273 (2014) (per curiam). This judicial scrutiny is highly deferential, and courts adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under Strickland, Beck "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To show prejudice in the context of an ineffective assistance claim arising out of the plea process, Beck "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Beck must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

To be knowing and voluntary, "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999) (quotations omitted). When accepting a guilty plea, a district court must ensure that these three "core concerns" of Federal Rule of Criminal Procedure 11 have been met. United States v. Lejarde-Rada, 319 F.3d 1288, 1289 (11th Cir. 2003) (per curiam).

Additionally, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). As the Supreme Court has made clear:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).

In this case, the record reflects that Beck voluntarily pled guilty to the offenses charged in counts two and five of the indictment with full knowledge of the nature of the charges against him and the potential consequences of his plea. As noted above,

Beck signed the plea agreement immediately below a paragraph stating that he had read and carefully reviewed every part of the plea agreement with his attorney, understood the plea agreement, and voluntarily agreed to it. (Doc. 48 at 13-14). The plea agreement listed the potential penalties for the offenses to which Beck was pleading guilty. (Id. at 3-4). Among other things, the plea agreement noted that count two required a "[m]inimum mandatory 10 years to life imprisonment," and that count five required a "[m]inimum mandatory 5 years consecutive imprisonment up to life imprisonment." (Id.). Beck also agreed to and signed the incorporated factual resume, which listed the elements of the offenses to which he was pleading guilty and detailed his offense conduct. (Id. at 15-18). Beck stipulated that the factual resume was true and accurate in every respect, and that the Government could prove the facts listed in the factual resume beyond a reasonable doubt if the case proceeded to trial. (Id. at 13-14).

At Beck's change-of-plea hearing, the Court reiterated the potential penalties for the offenses to which he was pleading guilty. (Doc. 80 at 6). The Court stated:

> The maximum penalty the Court could impose upon conviction of this offense as to Count – you are pleading to two counts. So, as to Count 2, it's a minimum mandatory of ten years up to life in prison, a fine not to exceed $10 million, a term of supervised release of at least 5 years, which would follow any term of imprisonment. If you violated the conditions of supervised release, you could be imprisoned for that entire term as well. A mandatory special assessment of

$100. And a forfeiture of any property listed in the indictment.

As to Count 5, the minimum – excuse me – the maximum sentence I can impose will be a minimum mandatory of 5 years consecutive to the sentence you receive in Count 2 up to life imprisonment, a fine not to exceed $250,000, a term of supervised release, again, of 5 years, which would follow any term of imprisonment, a mandatory special assessment of $100, and again, the forfeiture of the firearms.

(Id.). Beck confirmed that he understood "those possible consequences" of his guilty plea. (Id.). The Court also reiterated what the Government would have to prove in order to convict Beck of the offenses to which he was pleading guilty. (Id. at 10). Beck confirmed that he understood what the Government would have to prove in order to convict him of the charges to which he was pleading guilty, and he agreed that the Government could prove the facts set forth in the factual resume. (Id. at 10-11). Beck stated under oath that he understood the charges pending against him and had fully discussed the charges and the case in general with his attorney. (Id. at 4). Beck also acknowledged that he understood the terms of his plea agreement and had been given the opportunity to read and discuss his plea agreement and factual resume with his attorney before signing them. (Id. at 4-5). Beck told the Court that he was fully satisfied with the representation, counsel, and advice he had received from O'Bannon in this case. (Id. at 4). Beck confirmed that no one had made any promises outside the plea agreement or attempted to force or

threaten him in order to persuade him to plead guilty.  (Id. at 5).  Beck represented that he was pleading guilty of his own free will because he was guilty.  (Id. at 5-6).

Beck has not met his "heavy burden to show that his statements under oath were false."  See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam).[6]  As reflected above, the Court addressed Rule 11's core concerns during the guilty plea colloquy and ensured that Beck was entering his plea free from coercion and with understanding of the nature of the charges against him and the consequences of his plea.

Beck's claim that his counsel pressured him into pleading guilty is contradicted by his own sworn representations during the guilty plea colloquy.  While under oath, Beck denied that anyone had threatened or attempted to force him to plead guilty, and he confirmed that he was fully satisfied with O'Bannon's representation and advice.  Beck also confirmed that he had been given the opportunity to read and discuss the plea agreement and factual resume with O'Bannon before signing them, that he understood the terms of the plea agreement, and that he understood

---

[6] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.  See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."); Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

his right to maintain a plea of not guilty. Despite having numerous opportunities to inform the Court that O'Bannon had pressured him into signing the plea agreement or to ask the Court for more time to consider his decision to enter a guilty plea, Beck never did so and instead stated that he was pleading guilty of his own free will because he was guilty. After hearing and observing Beck's responses to its questions, the Court specifically concluded that Beck's plea of guilty was knowing and voluntary. Beck has not shown any reason why the Court should disregard his sworn statements at the guilty plea hearing in favor of belated, vague, and self-serving assertions to the contrary. The generalized assertions in Beck's recent filings are insufficient to overcome the strong presumption that his statements under oath during the plea colloquy were true, or to show that O'Bannon was ineffective for somehow "pressuring" him to plead guilty.

To the extent Beck asserts that O'Bannon failed to ensure that he understood the charges to which he was pleading guilty, his claim is refuted by the record. The plea agreement specified the two offenses to which Beck was pleading guilty, and the factual resume listed the elements of those offenses and detailed the relevant offense conduct. Beck represented by his signature that he had read and carefully reviewed every part of the plea agreement

with his attorney, and O'Bannon similarly represented that she had carefully reviewed the plea agreement and factual resume with Beck.

At his change-of-plea hearing, Beck confirmed under oath that he had received a copy of the indictment and understood the charges against him. Beck also acknowledged that he had been given the chance to read and discuss the plea agreement and factual resume with his attorney before signing them. In addition, the Court informed Beck of the charges to which he was pleading guilty and the elements the Government would have to prove in order to convict him of those charges, and Beck confirmed that he understood what the Government would have to prove in order to convict him. Once again, Beck has offered nothing that would overcome the strong presumption that these statements made under oath were true. Moreover, Beck fails to explain what specifically he did not understand about the charges and how his purported lack of understanding impacted his decision to plead guilty. Beck's conclusory, unsupported assertions are subject to summary dismissal.

Beck's vague allegation that he "did not agree with or even fully understand" the "factor" of "possession of a firearm in connection with drug trafficking" at the time of his plea is likewise contradicted by the record. The factual resume listed the elements the Government would have to establish in order to prove a violation of § 924(c)(1)(A) and set out Beck's relevant

offense conduct. Beck admitted under oath that the factual resume was true and accurate in every respect, and that the Government could have proved the same beyond a reasonable doubt. The Court also informed Beck during the guilty plea colloquy what the Government would need to prove in order to convict him of the § 924(c)(1)(A) charge in count five, and Beck confirmed that he understood what the Government would have to prove to convict him of count five. Beck fails to identify what in particular he "did not agree with or even fully understand" about "possession of a firearm in connection with drug trafficking," or to explain how it impacted his decision to enter a guilty plea. Indeed, although Beck later expressed a belief at sentencing that he was not guilty of possessing a firearm in connection with drug trafficking, he has offered no specific facts or legal authority to support such a belief. Beck's belated and self-serving presentation of conclusory allegations unsupported by specifics entitles him to no relief under § 2255.

Similarly, to the extent Beck claims he disagreed with or did not understand the "factor" of "drug purity," he fails to specify what in particular he did not agree with or understand about the matter, nor does he explain how it impacted his decision to enter a guilty plea. Notably, when he signed the plea agreement, Beck agreed that he "was accountable for approximately 178 grams of methamphetamine actual as relevant conduct" and agreed "to be bound

by the final totals as to type and quantity reflected in the Drug Enforcement Administration tox reports when they are received." (Doc. 48 at 18). Despite these agreements, Beck was ultimately held responsible for the lower figure of 147.61 grams of methamphetamine actual as relevant conduct. (Doc. 56 at 5). Thus, it is not clear what Beck's complaint is with regard to the issue of "drug purity." Furthermore, Beck was well aware of the potential penalties for his offenses when he stipulated to the truth and accuracy of the factual resume (include drug type and quantity) and agreed to plead guilty. Beck's vague and conclusory allegations regarding his alleged lack of understanding or agreement relating to the matter of "drug purity" warrant no relief.

Beck suggests that O'Bannon failed to recognize "that the plea agreement triggered a total 15-year minimum mandatory sentence, which was substantially greater than the guidelines range triggered by the offense of potential conviction." (See Doc. 93-1 at 8). But it is Beck who apparently fails to recognize the applicable guideline sentences in this case. The PSR, which the Court adopted without change, explained that because the guideline range of 70 to 87 months was below the statutory minimum sentence of ten years, the guideline term of imprisonment for count two was 120 months. (Doc. 56 at 11); see U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than

the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). The PSR further noted that the guideline range for count five was the statutory minimum consecutive sentence of 60 months. (Doc. 56 at 11); see U.S.S.G. § 5G1.2(a) ("[T]he sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment, shall be determined by that statute and imposed independently."); see also id. cmt. n.2 (citing 18 U.S.C. § 924(c) as an example of such a statute). Nothing in the record suggests that O'Bannon (or Beck) was unaware that a plea of guilty to counts two and five would require a statutory mandatory minimum prison sentence totaling 180 months.

To the extent Beck contends that O'Bannon was ineffective for advising him to plead guilty when the statutorily required sentence was greater than the applicable guideline range, his contention is meritless. "Guideline provisions do not override statutory requirements." Street v. United States, 359 F. App'x 109, 111 (11th Cir. 2009) (per curiam). Irrespective of the guidelines, Beck faced the same statutorily mandated sentences regardless of whether he entered a guilty plea or was found guilty after a trial. And Beck benefited significantly from the plea agreement because the Government agreed to dismiss the three remaining counts after

sentencing, including count three, which carried an *additional* 60-month mandatory minimum consecutive prison sentence. Notably, Beck has offered no specific facts or reasoned legal arguments suggesting that he had a viable defense to any of the charges set forth in the indictment had he proceeded to trial, or to otherwise call into question O'Bannon's advice that he accept the Government's favorable plea offer. Furthermore, Beck entered his guilty plea with full knowledge of his possible maximum and minimum sentences, and with the understanding that his advisory guideline range could not yet be determined and that statutory sentencing factors might result in a sentence higher than that called for in the guidelines. Accordingly, he cannot show that O'Bannon was ineffective for advising him to plead guilty under these circumstances.

Finally, Beck has not shown that O'Bannon was ineffective for failing to provide an accurate assessment of his sentencing exposure if he were found guilty after a trial as opposed to entering a guilty plea. Beck avers that he agreed to plead guilty because O'Bannon told him he "would end up with a Life sentence" if he went to trial. (Doc. 93-2 at 2). However, assuming Beck's assertion is accurate, he has not shown that O'Bannon's prediction was unreasonable or incorrect. Three of the five counts in the indictment *did* carry a potential life sentence, while the other two counts each carried a maximum potential sentence of 40 years.

(See Doc. 13-1; Doc. 21 at 6).  Moreover, even if O'Bannon's alleged prediction of a life sentence if Beck proceeded to trial was incorrect, "an erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance."  Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir. Unit B Mar. 12, 1981).[7]  Such is the case here.  Beck faced the possibility of a life sentence, and he also faced a 240-month mandatory minimum sentence if convicted of all counts at trial. Prior to entering his guilty plea, Beck confirmed that he understood the sentence ultimately imposed in the case might be different from any estimate his lawyer or anyone else might have given him.  And Beck has not explained *why* he would have declined the plea offer and proceeded to trial absent counsel's alleged prediction that he would end up with a life sentence after a trial, or why it would have made any sense for him to proceed to trial under the circumstances of this case.  Accordingly, Beck has demonstrated neither deficient performance nor prejudice with respect to O'Bannon's allegedly erroneous sentencing prediction.

In sum, the record firmly establishes that Beck's guilty plea was knowing and voluntary.  Beck has provided the Court with nothing that would overcome the strong presumption that his

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

statements under oath during the guilty plea colloquy were true, and his assertions regarding counsel's performance in advising him to accept the plea agreement and enter a guilty plea are either meritless, controverted by the record, or insufficient to establish constitutionally deficient performance and prejudice. Accordingly, Beck is entitled to no relief with respect to his claim that his guilty plea was not knowing and voluntary as a result of ineffective assistance of counsel.

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. <u>See</u> Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." <u>Id.</u> at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the

prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find the Court's disposition of Beck's claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Beck is

not entitled to a certificate of appealability and should not be permitted to proceed *in forma pauperis* on appeal.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner Jonathon Howard Beck's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 93) be **DENIED,** that this action be **DISMISSED with prejudice,** and that judgment be entered in favor of the Respondent, the United States of America, and against the Petitioner, Jonathon Howard Beck.  It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED.**

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was

informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **6th** day of **May, 2024.**

_____/s/ SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**
